1

**KRONENBERGER BURGOYNE, LLP**

2

Karl S. Kronenberger (CA Bar No. 226112)
Henry M. Burgoyne, III (CA Bar No. 203748)

3

Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520

4

San Francisco, CA 94108
Telephone: (415) 955-1155

5

Facsimile: (415) 955-1158

6

hank@KBInternetLaw.com
karl@KBInternetLaw.com

7

jeff@KBInternetLaw.com

8

Attorneys for Plaintiffs

9

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

13

14

**DEBORAH DEFFENBAUGH, ALLAN
WYATT,** and **DANNIE BRASWELL,**

15

individually and on behalf of a class of
similarly situated persons,

16

17

Plaintiffs,

18

vs.

19

20

**EDEBITPAY, L.L.C.,** a Nevada Limited
Liability Company, **PLATINUM ONLINE**

21

**GROUP, LLC,** a California Limited
Liability Company, **DALE PAUL**

22

**CLEVELAND,** an individual, **WILLIAM
RICHARD WILSON,** an individual, **FIRST**

23

**BANK OF DELAWARE,** a Delaware

24

Corporation and **DOES 1-10,** inclusive,

25

Defendants.

26

27

28

Case No. CV-11-3024 (MEJ)

**CLASS ACTION**

**FIRST AMENDED COMPLAINT FOR:**
- **VIOLATION OF BUS. & PROF. C. §17200;**
- **VIOLATION OF ARIZ. REV. STAT. §§44-1521** *et seq.*;
- **VIOLATION OF 18 U.S.C. §2510** *et seq.*;
- **CONVERSION AND AIDING AND ABETTING CONVERSION;**
- **NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

**FIRST AMENDED CLASS ACTION COMPLAINT**

1    Plaintiffs Deborah Deffenbaugh, Allan Wyatt, and Dannie Braswell, individually
2    and on behalf of a class of similarly situated persons, bring this action, by and through
3    their undersigned counsel, and allege as follows:

4                                    **INTRODUCTION**

5        1.    This complaint addresses Defendants' theft of money from those who need
6    it the most.   Defendants EDebitPay, L.L.C., Platinum Online Group, LLC, Dale Paul
7    Cleveland, and William Richard Wilson (collectively, the "EDebitPay Defendants") operate
8    a scam where they lure people into applying for payday loans on Internet websites.   The
9    EDebitPay Defendants take the information they gather from the payday loan
10   applications—including the applicants' banking information—and use this information to
11   forge checks on behalf of the applicants.   These checks are fakes; they are created
12   without the applicants' knowledge or consent.   These checks supposedly pay for the
13   EDebitPay Defendants' online coupon services, though no applicant ever agreed to buy
14   such services.   In fact, the idea that a cash-strapped, payday loan applicant would spend
15   money on the EDebitPay Defendants' coupon service, the purpose of which is to
16   encourage a person to spend additional money with the EDebitPay Defendants' coupons,
17   is absurd.   The money is transferred from the applicants' checking accounts to the
18   EDebitPay Defendants' bank accounts before the applicants realize that the forged
19   checks have been drawn or that withdrawals have been made.   The EDebitPay
20   Defendants have performed this scam thousands of times, and robbed people in a frail
21   financial condition of their remaining money.

22       2.    Defendant First Bank of Delaware serves as a depository bank for the
23   EDebitPay Defendants.   First Bank of Delaware provided material assistance to the
24   EDebitPay Defendants knowing that, or in reckless disregard of the fact that, the
25   EDebitPay Defendants were engaging in wrongful and unlawful conduct.

26       3.    Plaintiffs Deffenbaugh, Wyatt, and Braswell separately applied for payday
27   loans on different payday loan websites in the first half of 2011.

28   //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    4.    As part of the online application process, Plaintiffs entered their personal

2    information into the payday loan website, including their checking account number and

3    bank routing number.

4    5.    During the application process, Plaintiffs specifically did not register for

5    and/or rejected all third party offers that were advertised on the payday loan websites.

6    6.    On information and belief, these payday loan websites were operated by

7    the EDebitPay Defendants or by the EDebitPay Defendants' affiliates.

8    7.    Without Plaintiffs' knowledge or consent, the EDebitPay Defendants

9    obtained Plaintiffs' personal information from these payday loan websites.

10    8.    Without Plaintiffs' knowledge or consent, the EDebitPay Defendants used

11    Plaintiffs' personal information to register Plaintiffs for the EDebitPay Defendants' online

12    coupon services.

13    9.    However, Plaintiffs had never heard of the EDebitPay Defendants' coupon

14    services, let alone registered for these services.

15    10.    The EDebitPay Defendants then drafted remotely created checks from

16    Plaintiffs' checking accounts, making them payable to the EDebitPay Defendants for the

17    EDebitPay Defendants' coupon services.   Plaintiffs never authorized the EDebitPay

18    Defendants to draft these checks.

19    11.    The EDebitPay Defendants deposited the checks in the EDebitPay

20    Defendants' accounts, including in their account with Defendant First Bank of Delaware.

21    12.    While knowing about—or in reckless disregard of—the EDebitPay

22    Defendants' scam, First Bank of Delaware authenticated the remotely created checks and

23    sent the checks to Plaintiffs' banks for settlement.

24    13.    First Bank of Delaware received the funds identified in the remotely created

25    checks and deposited those funds in the EDebitPay Defendants' accounts.

26    14.    As a result of Defendants' misconduct, Plaintiffs and those similarly situated

27    to Plaintiffs have been damaged.

28    //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

15. On information and belief, Defendants have engaged in this same misconduct with respect to thousands of other individuals who are similarly situated to Plaintiffs, where: a) these individuals applied for a loan on a payday loan website where they entered their checking account information, b) these individuals never authorized Defendants to draft remotely created checks from their checking accounts, c) Defendants used the individuals' personal information to draft remotely created checks without the individuals' authorization, and d) Defendants deposited these remotely created checks.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d)(2) because this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the class of plaintiffs is a citizen of a State different from any defendant.

17. This Court has personal jurisdiction over Defendants because a substantial part of Defendants' misconduct that gave rise to this action occurred in California. Moreover, defendants EDebitPay, L.L.C. and Platinum Online Group, LLC reside in California, and Platinum Online Group, LLC is a California limited liability company.

18. Venue is proper under 28 U.S.C. §1391(a), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

19. Pursuant to Local Civil Rule 3-2(c), this action should remain assigned to the San Francisco Courthouse because a substantial part of the events or omissions which give rise to the claims occurred in San Francisco.

## PARTIES

20. On information and belief, Defendant EDebitPay, L.L.C. ("EDebitPay") is a Nevada limited liability company with its principal office in Sherman Oaks, CA.

21. On information and belief, Defendant Platinum Online Group, LLC ("Platinum") is a California limited liability company with its principal office in Sherman Oaks, CA.

22. On information and belief, Defendant Dale Paul Cleveland is an individual and the Chief Executive Officer and one of the two managing members of EDebitPay and is a principal of Platinum. On information and belief, Cleveland is responsible for the day-to-day operations and general management of EDebitPay and Platinum, and has participated in all aspects of their operations.

23. On information and belief, Defendant William Richard Wilson is an individual and the President and one of the two managing members of Defendant EDebitPay, L.L.C. and is a principal of Platinum Online Group, LLC. On information and belief, Wilson is responsible for the day-to-day management of EDebitPay and Platinum's advertising and sales, including the marketing of their Internet websites.

24. On information and belief, Cleveland and Wilson were aware of and actively participated in all of the actions, activities, and events alleged herein.

25. On information and belief, Defendant First Bank of Delaware is a Delaware corporation and a Delaware chartered bank based in Wilmington, Delaware. On information and belief, First Bank of Delaware has actively marketed payday loans throughout California.

26. Plaintiff Deborah Deffenbaugh is an individual residing in San Francisco, CA.

27. Plaintiff Alan Wyatt is an individual residing in Malibu, CA.

28. Plaintiff Dannie Braswell is an individual residing in Newton, TX.

29. Plaintiffs are uncertain of the true names and capacities of those Defendants sued by the fictitious names DOES 1 through 10, who also are responsible and liable for the injuries alleged in this complaint and who proximately caused damages to Plaintiffs and the other members of the Class. Plaintiffs will amend this complaint to add the true names and capacities of the DOES when they become known.

30. Upon information and belief, at all times all Defendants were the principals, agents, affiliates, partners, and/or co-conspirators of each other, and each acted within

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

4

**FIRST AMENDED CLASS ACTION COMPLAINT**

1   the course, scope, and authority of such relationships so that, as a result, all Defendants

2   are jointly and severally liable for the acts alleged herein.

3                                    **FACTUAL ALLEGATIONS**

4                                    **Remotely Created Checks**

5        31.    A remotely created check is a check that is not created by the paying bank

6   and that does not bear the signature of the payor.  Rather, a remotely created check is a

7   check that is: a) created by the payee, b) that is drawn on the payor's bank account, and

8   c) that does not bear the signature of the payor in the format agreed to between the

9   paying bank and payor.

10       32.    A remotely created check is typically created when the holder of a checking

11  account (the payor) authorizes a payee to draft a check on the payor's account, but

12  where the payor does not actually sign the check.

13       33.    In place of the signature of the payor, a remotely created check typically

14  bears the customer's printed or typed name or bears a statement that the payor has

15  authorized the check.

16       34.    Thus, with the payor's authorization, the payee may create a remotely

17  created check payable to itself.  Instead of obtaining the payor's actual signature on the

18  check, the payee inserts the statement that the payor has authorized the remotely created

19  check.  The payee then deposits the remotely created check in the payee's bank account.

20       35.    After evaluating the authenticity of the check, the payee's depositary bank

21  sends the remotely created check to the payor's bank for settlement.  If the payor's bank

22  accepts the check, it will provide the funds identified in the check to the payee's bank.

23  The payee's bank, in turn, will deposit those funds in the payee's account.  All of these

24  steps may occur before the payor sees the remotely created check or even knows that a

25  withdrawal has been made from his or her bank account.

26       36.    Remotely created checks can be a useful payment device.  For example, a

27  debtor can authorize a service provider to draft a remotely created check by telephone,

28  which may enable the debtor to pay his or her bill in a timely manner and avoid late charges.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

37.    On the other hand, remotely created checks are vulnerable to fraud because they do not bear the payor's signature or other readily verifiable indication of authorization.

38.    As the Federal Trade Commission has noted, the banking community and lawmakers have recognized that with remotely created checks, the burden of ensuring that the check is authorized is properly placed on the bank whose customer deposited the check.  This is true because this bank—*i.e.* the depositary bank—is in the best position to detect fraud, and this burden provides an economic incentive for the depositary bank to monitor customers that deposit remotely created checks, and thus, to limit the number of fraudulent remotely created checks that are introduced into the check collection system.  Thus, the depositary bank has a duty to examine a remotely created check for authenticity before sending the check to the paying bank for settlement.

39.    Remotely created checks are subject to state law on negotiable instruments, and specifically Articles 3 and 4 of the Uniform Commercial Code, as adopted by California in Commercial Code sections 3101 *et seq.* and 4101 *et seq.*

40.    If a remotely created check is not honored by the paying bank (or drawee), the check is deemed "returned."

41.    A remotely created check may be returned for a variety of reasons, including where the drawer account does not exist or is closed, where the drawer account has insufficient funds to settle the check, or where the check is a forgery or otherwise fraudulent.

42.    For the past several years, the Federal Reserve has reported that the average total return rate for checks is about 0.5%.

### The EDebitPay Defendants Misappropriated Personal Information and Drafted Fraudulent Remotely Created Checks Using that Information

43.    On information and belief, the EDebitPay Defendants operate as a single entity, as they are based at the same location, are connected with the same e-commerce websites, refer to each other interchangeably on each other's websites, are associated

1   with the same phone numbers, and have at least some overlapping officers and/or

2   principals.

3   **A.    The EDebitPay Defendants' Club Websites.**

4        44.    Defendants operate Internet websites that advertise membership in online

5   coupon services clubs. These websites include, but are not limited to, the websites located

6   at <savingpaysclub.com> (the "Saving Pays Club Website") and

7   <ultimateplatinumoffer.com> (the "Ultimate Platinum Offer Website"; collectively, the

8   "EDebitPay Defendants' Club Websites").

9        45.    A person may sign up to become a member of one of the EDebitPay

10  Defendants' Club Websites by entering his or her name, address, email address, and

11  phone number into the website's application screen.  Upon entering this information, the

12  applicant is taken to a new webpage, where the applicant must enter his or her social

13  security number, checking account number, and bank routing number into the websites'

14  application screen.

15       46.    Once an applicant enters his or her personal information into one of the

16  EDebitPay Defendants' Club Websites, the EDebitPay Defendants draft remotely created

17  checks payable to Platinum Online Group from the applicant's checking account to pay

18  for the EDebitPay Defendants' coupon services.

19       47.    The EDebitPay Defendants then deposit these remotely created checks in

20  the EDebitPay Defendants' depositary account.

21  **B.    The EDebitPay Defendants' Involuntary Enrollment of Members in The**
22  **EDebitPay Defendants' Club Websites with Information Obtained from**
    **Payday Loan Websites.**
23

24       48.    Despite the process described in Section A above, the vast majority of

25  members of the EDebitPay Defendants' Club Websites did not become members

26  voluntarily.  Rather, the EDebitPay Defendants registered most people without their

27  knowledge or consent.

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

49.     In particular, the EDebitPay Defendants obtained information regarding individuals ("Applicants") from various websites that allow individuals to apply for short-term cash advances, referred to as payday loans or paycheck loans (collectively, the "Payday Loan Websites").[1]

50.     On information and belief, the Payday Loan Websites were created, maintained, and operated by the EDebitPay Defendants or the EDebitPay Defendants' affiliates.  The affiliates are third parties with whom the EDebitPay Defendants contract to collect Applicants' personal information through the operation of the Payday Loan Websites.

51.     When applying for a payday loan on a Payday Loan Website, an Applicant was required to enter his or her personal information, including, name, address, email address, and telephone number.  Additionally, an Applicant was required to enter his or her checking account number and bank routing number.  The Payday Loan Websites would not allow the Applicant to proceed with the application process unless a valid checking account number and bank routing number were entered.  With varying language, the Payday Loan Websites stated that the Applicant's checking account information was necessary to fund the loan.

52.     Without the Applicants' knowledge or consent, the operators of the Payday Loan Websites transferred the Applicants' personal information—including the Applicants' checking account information—to the EDebitPay Defendants.

53.     Without the Applicants' knowledge or consent, the EDebitPay Defendants used the Applicants' personal information to register the Applicants for memberships in the EDebitPay Defendants' Club Websites, such as the Saving Pays Club Website and the Ultimate Platinum Offer Website.

---

[1] A payday loan (also called a paycheck advance or payday advance) is a small, short-term loan intended to cover immediate expenses until the loan applicant's next paycheck arrives, where payment and repayment are made directly to and from the recipient's checking account.

1   54.   The Applicants never consented to registering for any membership with any

2   of the EDebitPay Defendants' Club Websites.

3   55.   Without the Applicants' knowledge or consent, after the EDebitPay

4   Defendants registered the Applicants as members of the EDebitPay Defendants' Club

5   Websites, the EDebitPay Defendants drafted remotely created checks from the

6   Applicants' checking accounts payable to Platinum Online Group.  The Applicants were

7   unaware that the EDebitPay Defendants were drafting or depositing these remotely

8   created checks.

9   56.   The EDebitPay Defendants deposited these remotely created checks in the

10  EDebitPay Defendants' depositary bank account.

11  57.   The EDebitPay Defendants' bank authenticated these checks as legitimate

12  and then sent them to the Applicants' banks for settlement.

13  58.   Without the Applicants' knowledge or consent, the Applicants' banks

14  withdrew the funds from the Applicants' checking accounts to settle the remotely created

15  checks.

16  59.   Upon receiving the settled funds from the Applicants' banks, the EDebitPay

17  Defendants' bank deposited the funds in the EDebitPay Defendants' account.

18  60.   This check settlement process occurred before the Applicants realized that

19  money had been withdrawn from their accounts.

20  61.   On information and belief Defendants Cleveland and Wilson knew about,

21  controlled, orchestrated, and actively participated in the above-described misconduct as

22  principals, officers, and employees of EDebitPay and Platinum.

23  62.   On information and belief, the return rate for the EDebitPay Defendants'

24  remotely created checks was much higher than the average check return rate.  On

25  information and belief, the EDebitPay Defendants received thousands of consumer

26  complaints about their remotely created checks.

27  //

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

63.     As a result of the EDebitPay Defendants' misconduct, money was wrongfully withdrawn from the Applicants' bank accounts and the Applicants were harmed.

**First Bank of Delaware Knew About or Recklessly Disregarded the EDebitPay Defendants' Unlawful Practices**

64.     The EDebitPay Defendants—either in their own name, or in the name of a payment processor—maintain a depositary bank account with Defendant First Bank of Delaware.

65.     As described above, the EDebitPay Defendants took the information they intercepted from the payday loan applications, and used that information to forge remotely created checks on behalf of the Applicants without the Applicants' knowledge or consent.

66.     The EDebitPay Defendants deposited these remotely created checks in the EDebitPay Defendants' depositary bank accounts, which included an account with Defendant First Bank of Delaware.

67.     On information and belief, First Bank of Delaware had access to and monitored the EDebitPay Defendants' bank account.

68.     On information and belief, First Bank of Delaware was notified when one of the EDebitPay Defendants' remotely created checks was returned as not payable by the paying bank (or drawee).

69.     On information and belief, First Bank of Delaware maintained aggregate data for the EDebitPay Defendants' account, including the total number of checks deposited, the total dollar amount deposited, the total number of returned checks, and the reasons for the returned checks.

70.     On information and belief, First Bank of Delaware knew that the return rate for the EDebitPay Defendants' remotely created checks far exceeded an acceptable return rate.

//

//

**FIRST AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

71.     On information and belief, First Bank of Delaware knew about the thousands of consumer complaints about the EDebitPay Defendants' remotely created checks.

72.     On information and belief, First Bank of Delaware knew that thousands of purported drawers of the EDebitPay Defendants' remotely created checks had reported that the checks were forgeries to the paying banks (or drawees).

73.     Based on these circumstances, First Bank of Delaware knew or recklessly disregarded the fact that the EDebitPay Defendants were engaging in wrongful and unlawful conduct.

74.     Despite First Bank of Delaware's knowledge—or reckless disregard of the EDebitPay Defendants' unlawful practices—First Bank of Delaware provided material assistance to the EDebitPay Defendants in depositing and settling their remotely created checks.

75.     As a result of First Bank of Delaware's misconduct, money was wrongfully withdrawn from the Applicants' bank accounts.

**Plaintiff Deffenbaugh**

76.     Plaintiff Deffenbaugh has never applied to be a member of the Saving Pays Club Website, the Ultimate Platinum Offer Website or any similar website.  Deffenbaugh never provided her checking account number or her bank routing number to the Saving Pays Club Website, the Ultimate Platinum Offer Website, or any similar website.

77.     In or around May 2011, Deffenbaugh applied for a payday loan on a Payday Loan Website.

78.     In applying for a payday loan, the Payday Loan Website presented Deffenbaugh with online offers for unrelated goods and services.  However, Deffenbaugh specifically chose not to participate in any of those offers or to make any purchases. Given Deffenbaugh's financial situation, it was not possible for Deffenbaugh to consider participating in such offers, and she automatically rejected all such offers.

//

79.   In order to apply for a payday loan, the Payday Loan Website required Deffenbaugh to enter her checking account number and her bank routing number into the Payday Loan Website's application screen.  Deffenbaugh entered this information into the Payday Loan Website.

80.   On information and belief, without Deffenbaugh's knowledge or consent, the Payday Loan Website transferred Deffenbaugh's personal information—including her checking account number and bank routing number—to the EDebitPay Defendants.

81.   Without Deffenbaugh's knowledge or consent, the EDebitPay Defendants used Deffenbaugh's personal information—including her account number and bank routing number—to enroll Deffenbaugh as a member of the Saving Pays Club Website, the Ultimate Platinum Offer Website, or another EDebitPay Defendants' Club Website.

82.   On or around May 25, 2011, without Deffenbaugh's knowledge or consent, Defendants generated a remotely created check from Deffenbaugh's checking account, payable to "Platinum Online Group – SavingPays99," in the amount of $99.49.

83.   Defendants deposited this remotely created check in Defendants' depositary bank account.

84.   Because Deffenbaugh had no knowledge of the EDebitPay Defendants or the EDebitPay Defendants' Club Websites, and because Deffenbaugh had not consented to have the EDebitPay Defendants draft a remotely created check to pay for a membership in any of the EDebitPay Defendants' Club Websites, Deffenbaugh did not learn that the EDebitPay Defendants had drafted a remotely created check in her name until after the check had settled and funds had been withdrawn from Deffenbaugh's account.

85.   As a result of the EDebitPay Defendants' misconduct, money was wrongfully withdrawn from Deffenbaugh's account and Deffenbaugh has been damaged.

**Plaintiff Wyatt**

86.   Plaintiff Wyatt has never applied to be a member of the Saving Pays Club Website, the Ultimate Platinum Offer Website or any similar website.  Wyatt never

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**FIRST AMENDED CLASS ACTION COMPLAINT**

1 | provided his checking account number or his bank routing number to the Saving Pays
2 | Club Website, the Ultimate Platinum Offer Website, or any similar website.

3 |       87.    In or around May 2011, Wyatt applied for a payday loan on a Payday Loan
4 | Website. On information and belief, Wyatt applied for the payday loan on the website
5 | <paydayloans.com>.

6 |       88.    In applying for a payday loan, the Payday Loan Website presented Wyatt
7 | with online offers for unrelated goods and services. However, Wyatt specifically chose
8 | not to participate in any of those offers or to make any purchases. Given Wyatt's
9 | financial situation, it was not possible for Wyatt to consider participating in such offers,
10 | and he automatically rejected all such offers.

11 |       89.    In order to apply for a payday loan, the Payday Loan Website required
12 | Wyatt to enter his checking account number and his bank routing number into the
13 | Payday Loan Website's application screen. Wyatt entered this information into the
14 | Payday Loan Website.

15 |       90.    On information and belief, without Wyatt's knowledge or consent, the
16 | Payday Loan Website transferred Wyatt's personal information—including his checking
17 | account number and bank routing number—to the EDebitPay Defendants.

18 |       91.    Without Wyatt's knowledge or consent, the EDebitPay Defendants used
19 | Wyatt's personal information—including his account number and bank routing number—
20 | to enroll Wyatt as a member of the Saving Pays Club Website, the Ultimate Platinum
21 | Offer Website, or another EDebitPay Defendants' Club Website.

22 |       92.    On or around May 8, 2011, without Wyatt's knowledge or consent,
23 | Defendants generated a remotely created check from Wyatt's checking account, payable
24 | to "Platinum Online Group – SavingPays99," in the amount of $99.49.

25 |       93.    Defendants deposited this remotely created check in Defendants'
26 | depositary bank account.

27 |       94.    Because Wyatt had no knowledge of the EDebitPay Defendants or the
28 | EDebitPay Defendants' Club Websites, and because Wyatt had not consented to have

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    the EDebitPay Defendants draft a remotely created check to pay for a membership in any

2    of the EDebitPay Defendants' Club Websites, Wyatt did not learn that the EDebitPay

3    Defendants had drafted a remotely created check in his name until after the check had

4    settled and funds had been withdrawn from Wyatt's account.

5    95.    As a result of Defendants' misconduct, money was wrongfully withdrawn

6    from Wyatt's account and Wyatt has been damaged.

7                                    **Plaintiff Braswell**

8    96.    Plaintiff Braswell has never applied to be a member of the Saving Pays

9    Club Website, the Ultimate Platinum Offer Website or any similar website.  Braswell

10   never provided her checking account number or her bank routing number to the Saving

11   Pays Club Website, the Ultimate Platinum Offer Website, or any similar website.

12   97.    In or around January 2011, Braswell applied for a payday loan on a Payday

13   Loan Website.

14   98.    In applying for a payday loan, the Payday Loan Website presented Braswell

15   with online offers for unrelated goods and services.  However, Braswell specifically chose

16   not to participate in any of those offers or to make any purchases.  Given Braswell's

17   financial situation, it was not possible for Braswell to consider participating in such offers,

18   and she automatically rejected all such offers.

19   99.    In order to apply for a payday loan, the Payday Loan Website required

20   Braswell to enter her checking account number and her bank routing number into the

21   Payday Loan Website's application screen.  Braswell entered this information into the

22   Payday Loan Website.

23   100.   On information and belief, without Braswell's knowledge or consent, the

24   Payday Loan Website transferred Braswell's personal information—including her

25   checking account number and bank routing number—to the EDebitPay Defendants.

26   101.   Without Braswell knowledge or consent, the EDebitPay Defendants used

27   Braswell's personal information—including her account number and bank routing

28   number—to enroll Braswell as a member of the Saving Pays Club Website, the Ultimate

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Platinum Offer Website, or another EDebitPay Defendants' Club Website.

2       102.    On or around January 24, 2011, without Braswell's knowledge or consent,

3   the EDebitPay Defendants generated a remotely created check from Braswell's checking

4   account, payable to "Platinum Online Group," in the amount of $99.00.

5       103.    The EDebitPay Defendants deposited this remotely created check in the

6   EDebitPay Defendants' depositary bank account.

7       104.    Because Braswell had no knowledge of the EDebitPay Defendants or the

8   EDebitpay Defendants' Club Websites, and because Braswell had not consented to have

9   the EDebitPay Defendants draft a remotely created check to pay for a membership in any

10  of the EDebitPay Defendants' Club Websites, Braswell did not learn that the EDebitPay

11  Defendants had drafted a remotely created check in her name until after the check had

12  settled and funds had been withdrawn from Braswell's account.

13      105.    As a result of Defendants' misconduct, money was wrongfully withdrawn

14  from Braswell's account and Braswell has been damaged.

15                         **CLASS ACTION ALLEGATIONS**

16      106.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Deffenbaugh,

17  Wyatt, and Braswell bring this action on their own behalves and as representatives of all

18  persons: a) whose checking accounts were drawn on by way of remotely created checks

19  created by the EDebitPay Defendants for the Saving Pays Club Website, the Ultimate

20  Platinum Offer Website, and/or other online coupon or discount service operated by the

21  EDebitPay Defendants after June 20, 2007, and b) who never consented to the creation

22  of a remotely created check to pay for the EDebitPay Defendants' services on the Saving

23  Pays Club Website, the Ultimate Platinum Offer Website, and/or other online coupon or

24  discount service operated by Defendants.

25      107.    A class action is appropriate here because there exists an ascertainable

26  class and a well-defined community of interest in the questions of law and fact involved.

27      108.    The Class is readily ascertainable from Defendants' records of members of

28  the EDebitPay Defendants' Saving Pays Club Website, the Ultimate Platinum Offer

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Website, and/or other online coupon or discount service operated by Defendants.  The Class is also readily ascertainable from First Bank of Delaware's account information for the EDebitPay Defendants.

109.   A class action is the superior method for adjudicating this controversy because: a) the Class is so numerous that the joinder of all members is impracticable, b) questions of law and fact common to the Class predominate over any question affecting only individual Class members, and c) the claims of the representative Plaintiffs are typical of the claims of the Class, and the representative Plaintiffs will fairly and adequately protect the interests of the Class.

110.   The common questions of law and fact include:

- Whether the EDebitPay Defendants intercepted the personal information that Applicants submitted to the Payday Loan Websites, as the term "intercepted" is used in 18 U.S.C. §2510(4);

- Whether the EDebitPay Defendants used information from Payday Loan Websites to draft remotely created checks;

- Whether the EDebitPay Defendants obtained authorization to draft remotely created checks using the information they obtained from Payday Loan Websites;

- Whether First Bank of Delaware knew about or acted in reckless disregard of the EDebitPay Defendants' misconduct, and whether First Bank of Delaware provided the EDebitPay Defendants with substantial assistance in carrying out their misconduct;

- Whether the EDebitPay Defendants' unauthorized creation of remotely created checks from the Class members' checking accounts—and First Bank of Delaware's substantial assistance in doing the same—violated California Business & Professions Code section 17200;

- Whether the EDebitPay Defendants' unauthorized use of the Class

members' personal banking information, obtained through the interception of an electronic communication, violated the federal Electronic Communications Privacy Act, 18 U.S.C. §§2510 *et seq.*; and

- Whether First Bank of Delaware's material assistance to the EDebitPay Defendants constituted a breach of their duty of ordinary care and negligence.

111.   Plaintiffs can and will fairly and adequately represent and protect the interests of the Class because:

- All of the questions of law and fact regarding the liability of Defendants are common to the Class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants as to all Class members;

- Without the representation provided by Plaintiffs, it is unlikely that any Class members would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

- Plaintiffs have retained competent attorneys who are experienced both in the conduct of class actions and the law governing online advertising, e-contracting, and online payment systems.  Plaintiffs and their counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class members and are determined to discharge those duties to obtain the best possible recovery for the Class.

//

//

//

//

17

**FIRST AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CLAIM FOR RELIEF**

**(Violation of California Business and Professions Code section 17200—brought by Plaintiffs individually and on behalf of the Class against all Defendants)**

112.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 111.

113.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants obtained the Class members' personal information—including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

114.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants registered the Class members for membership with the Saving Pays Club Website, the Ultimate Platinum Club Website, or another EDebitPay Defendants' Website, using the personal information the EDebitPay Defendants had obtained from one or more Payday Loan Websites.

115.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants drafted remotely created checks drawn on the Class members' checking accounts.

116.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants deposited in its depositary bank accounts the remotely created checks drawn on the Class members' checking accounts.

117.    Without the authorization or consent of Plaintiffs or the other Class members, money was transferred from the Class members' checking accounts to the EDebitPay Defendants' depositary bank accounts.

118.    First Bank of Delaware provided substantial assistance to the EDebitPay Defendants in their commission of the above-described misconduct.

119.    First Bank of Delaware provided substantial assistance to the EDebitPay Defendants, while knowing about or in reckless disregard of the wrongfulness and unlawfulness of the EDebitPay Defendants' misconduct.

//

1    120.   Pursuant to 15 U.S.C. §8402, it is unlawful for any post-transaction third

2    party seller to charge or attempt to charge a person's bank account for any good or service

3    sold in a transaction effected on the Internet unless: a) before obtaining the consumer's

4    billing information, the post-transaction third party seller has clearly and conspicuously

5    disclosed to the consumer all material terms of the transaction, and b) the post-transaction

6    third party seller has received the express informed consent for the charge from the

7    consumer by requiring the consumer to perform an additional affirmative action, such as

8    clicking on a confirmation button or checking a box that indicates the consumer's consent

9    to be charged the amount disclosed.  Defendants failed to adhere to these requirements

10   before they drew checks on the accounts of Plaintiffs and the other Class members.

11   121.   Pursuant to 15 U.S.C. §8403, it is unlawful for any person to charge any

12   consumer for any goods or services sold in a transaction effected on the Internet through

13   a negative option feature as defined in 16 C.F.R. §310 unless the person: a) provides

14   text that clearly and conspicuously discloses all material terms of the transaction before

15   obtaining the consumer's billing information, b) obtains the consumer's express informed

16   consent before charging the consumer's bank account for products or services through

17   such transaction, and c) provides simple mechanisms for the consumer to stop recurring

18   charges from being placed on the consumer's bank account.  Defendants failed to

19   adhere to these requirements before they drew checks on the accounts of Plaintiffs and

20   the other class members.

21   122.   Defendants have engaged in an unlawful, unfair, and/or fraudulent

22   business act in violation of California Business and Professions Code section 17200.

23   123.   As a result of Defendants' misconduct, Plaintiffs and the other Class

24   members were damaged.

25   //

26   //

27   //

28   //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. CV-11-3024 (MEJ)                    19          **FIRST AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

### SECOND CLAIM FOR RELIEF

**(Violation of Electronic Communications Privacy Act, 18 U.S.C. §§2510 *et seq.*— brought by Plaintiffs individually and on behalf of the Class against all Defendants)**

124.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 123.

125.    Plaintiffs and the other Class members applied for payday loans on various Payday Loan Websites, which on information and belief, were operated by the EDebitPay Defendants and/or the EDebitPay Defendants' affiliates.

126.    Plaintiffs and the other Class members submitted their personal banking information to the Payday Loan Websites with the understanding that such information would be used only to apply for and fund a payday loan.

127.    Plaintiffs' and the other Class members' submission of personal information to the Payday Loan Websites constituted "electronic communications" as that term is defined in 18 U.S.C. §2510.

128.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants intercepted the Class members' personal information—including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

129.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants registered the Class members for membership with the Saving Pays Club Website, the Ultimate Platinum Club Website, or other EDebitPay Defendants' Website, using the personal information the EDebitPay Defendants had obtained from one or more Payday Loan Websites.

130.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants drafted remotely created checks drawn on the Class members' checking accounts.

131.    Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants deposited in their depositary bank accounts the

1    remotely created checks drawn on the Class members' checking accounts.

2    132.   Without the authorization or consent of Plaintiffs or the other Class

3    members, money was transferred from the Class members' checking accounts to the

4    EDebitPay Defendants' depositary bank accounts.

5    133.   First Bank of Delaware provided substantial assistance to the EDebitPay

6    Defendants in their commission of the above-described misconduct.

7    134.   First Bank of Delaware provided substantial assistance to the EDebitPay

8    Defendants, while knowing about or in reckless disregard of the fact that the EDebitPay

9    Defendants had intercepted the Class members' personal banking information.

10   135.   By engaging in the above-described conduct, Defendants intentionally used

11   and endeavored to use the contents of an electronic communication, knowing or having

12   reason to know that the information was obtained through the interception of an

13   electronic communication in violation of 18 U.S.C. §2511.

14   136.   Defendants intercepted and used Plaintiffs' and the other Class members'

15   electronic communications for the purpose of committing criminal and tortious acts in

16   violation of the laws of the United States and other states.

17   137.   As a result of Defendants' misconduct, Plaintiffs and the other Class

18   members were damaged.

19   ### THIRD CLAIM FOR RELIEF

20   **(Conversion & Aiding and Abetting Conversion—brought by Plaintiffs individually
     and on behalf of the Class against all Defendants)**

21

22   138.   Plaintiffs incorporate by reference the allegations contained in Paragraphs

23   1 through 137.

24   139.   Without the authorization or consent of Plaintiffs or the other Class

25   members, the EDebitPay Defendants obtained the Class members' personal

26   information—including their checking account numbers and bank routing numbers—from

27   one or more Payday Loan Websites.

28   //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

140. Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants registered the Class members for membership with the Saving Pays Club Website, the Ultimate Platinum Club Website, or another EDebitPay Defendants' Club Website, using the personal information the EDebitPay Defendants had obtained from one or more Payday Loan Websites.

141. Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants drafted remotely created checks drawn on the Class members' checking accounts.

142. Without the authorization or consent of Plaintiffs or the other Class members, the EDebitPay Defendants deposited in their depositary bank accounts the remotely created checks drawn on the Class members' checking accounts.

143. Without the authorization or consent of Plaintiffs or the other Class members, money was transferred from the Class members' checking accounts to the EDebitPay Defendants' depositary bank accounts.

144. First Bank of Delaware provided substantial assistance to the EDebitPay Defendants in their commission of the above-described misconduct.

145. First Bank of Delaware provided substantial assistance to the EDebitPay Defendants, while knowing about or in reckless disregard of the wrongfulness and unlawfulness of the EDebitPay Defendants' misconduct.

146. Plaintiffs and the other Class members owned the money in their bank accounts that was wrongfully transferred by Defendants through the use of remotely created checks.

147. Defendants transferred Plaintiffs' and the other Class members' money to Defendants willfully, without legal justification, and in a manner that was inconsistent with and violated the Class members' rights to their money.

148. The money wrongfully transferred by Defendants is a specific, identifiable sum.

//

1   149.   As a result of Defendants' misconduct, Plaintiffs and the other Class

2   members were damaged.

3   **FOURTH CLAIM FOR RELIEF**

4   **(Negligence—brought by Plaintiffs individually and on behalf of the Class against**
    **First Bank of Delaware)**

5

6   150.   Plaintiffs incorporate by reference the allegations contained in Paragraphs

7   1 through 149.

8   151.   Defendant First Bank of Delaware owed a duty of reasonable care to

9   Plaintiffs and the other Class members, where First Bank of Delaware deposited and

10  collected checks purportedly drawn on the Class members' accounts.

11  152.   Without the authorization or consent of Plaintiffs or the other Class

12  members, the EDebitPay Defendants drafted remotely created checks drawn on the

13  Class members' checking accounts.

14  153.   First Bank of Delaware breached its duty of care when it provided

15  substantial assistance to the EDebitPay Defendants in their commission of the above-

16  described misconduct.

17  154.   First Bank of Delaware knew or acted in reckless disregard of the fact that

18  its assistance to the EDebitPay Defendants was likely to cause injury to Plaintiffs and the

19  other Class members, as the risk to the Class members was apparent from the

20  fraudulent nature of the remotely created checks, including but not limited to the

21  excessive return rate.

22  155.   As a result of First Bank of Delaware's breaches of duty, Plaintiffs and the

23  other Class members were damaged.

24  //

25  //

26  //

27  //

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**PRAYER FOR RELIEF**

2

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

3

    1.    That the Court enter a judgment finding that Defendants have:

4

        a.    violated California Business and Professions Code §17200;

5

        b.    violated 18 U.S.C. §2511;

6

        c.    committed conversion; and

7

        d.    committed negligence.

8

    2.    That the Court enter a preliminary and permanent injunction restraining

9

Defendants from drafting or depositing remotely created checks without the payor's

10

authorization and consent.

11

    3.    That the Court award damages and monetary relief as follows:

12

        a.    Damages in an amount to be determined at trial in the form of the

13

             Class members' actual damages;

14

        b.    Damages in an amount to be determined at trial in the form of

15

             restitution of the money wrongfully withdrawn from the Class

16

             members' checking accounts pursuant to Cal. Bus. & Prof. C.

17

             §17200;

18

        c.    The greater of the Class members' actual damages on the one hand

19

             and statutory damages of $10,000 per violation as for each Class

20

             member on the other hand pursuant to 18 U.S.C. §2520(c);

21

        d.    Punitive damages pursuant to 18 U.S.C. §2520(a);

22

        e.    Exemplary damages pursuant to California Civil Code §3294;

23

        f.    Plaintiffs' and the other Class members' attorneys' fees under 18

24

             U.S.C. §2520(a); and

25

        g.    Plaintiffs' and the other Class members' costs.

26

    4.    Such other relief that the Court determines is just and proper.

27

//

28

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1 | Respectfully Submitted,

2 | DATED: August 19th, 2011         **KRONENBERGER BURGOYNE, LLP**

3 |

4 |

       By:  /s/ Karl S. Kronenberger

5 |                Karl S. Kronenberger

6 |        Attorneys for Plaintiffs

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**REQUEST FOR JURY TRIAL**

2 Plaintiffs hereby demand a trial of this action by jury.

3

4 DATED: August 19th, 2011       **KRONENBERGER BURGOYNE, LLP**

5

6          By:   /s/ Karl S. Kronenberger     

7                 Karl S. Kronenberger

8          Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com